# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**A&M STRATEGIC SOLUTIONS,**

                 **Plaintiff,**

**-vs-**                                            **Case No.  6:13-cv-1117-Orl-22DAB**

**SECRETARY, DEPARTMENT OF**
**HOMELAND SECURITY, DIRECTOR,**
**CITIZENSHIP AND IMMIGRATION**
**SERVICES and ACTING SERVICE**
**CENTER DIRECTOR, VERMONT**
**SERVICE CENTER,**

                 **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

       This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES (DOC. 19)** |
| **FILED:** | **November 21, 2014** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED** and the case be dismissed for lack of subject matter jurisdiction.

       This cause comes before the Court for consideration of the request for Writ of Mandamus

concerning an immigration visa (Doc. 1), Defendants' Response (Doc. 16) to the Court Order on

Affirmative Defenses, including the assertion that the Court lacks jurisdiction, and Plaintiff's Motion

to Strike Affirmative Defenses and Request for Evidentiary Hearing[1] (Doc. 19). Defendants' Answer

_____

[1]Because the Court's holding turns on the legal issues of mootness/standing and venue, an evidentiary hearing is not necessary.

and Affirmative Defenses raised the issue of the Court's lack of subject matter jurisdiction and improper venue.  Doc. 11 at 4.  Chief Judge Conway entered an order on October 8, 2013 requiring Defendants to more fully address their affirmative allegations that the court lacks subject matter jurisdiction[2], that the complaint fails to state a claim upon which relief can be granted, and that venue is improper.  Doc. 15 ("Given that Federal Courts are courts of limited jurisdiction, and given the scarce judicial resources of this District, the Court finds that the defenses should be addressed at this stage of the proceeding.").

On October 25, 2013, Defendants filed their Response to the Court Order on Affirmative Defenses (Doc. 16), and on November 21, 2013, in lieu of a response, Plaintiff filed its Motion to Strike Affirmative Defenses (Doc. 19).  On January 6, 2014, Judge Conway referred the matter for report and recommendation on the issues raised concerning subject matter jurisdiction and venue. Doc. 20.

### I. Standard of Review for Challenges to Subject Matter Jurisdiction

A party may attack subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) by either a facial attack or a factual attack.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  "Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject-matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  *Id*. at 1529 (citations omitted).  "'Factual attacks,' on the other hand, challenge the existence of subject-matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."  *Id.* As the Eleventh Circuit has explained, "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion–the court must consider the allegations of the complaint

---

[2]Courts have a continuing obligation to assess subject matter jurisdiction. "Under the law of this circuit, [ ] parties cannot waive subject matter jurisdiction, and we may consider subject matter jurisdiction claims at any time during litigation." *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999).

to be true." *Id.*  Where the Court lacks subject matter jurisdiction, it must dismiss the action.  *See* Fed. R. Civ. P. 12(h)(3).  Defendants' attack in this case is a facial attack.

## II. Background Facts

The basis of Plaintiff's action is a request for the Court to compel Defendants to reinstate a Form I-129 Petition for H-1B Non-immigrant Skilled Worker Nikita Jangale (the "Petition")[3], that Plaintiff filed on April 1, 2013.  Doc. 1 ¶ 12.  The Petition was selected for processing.  Plaintiff received a filing receipt from USCIS dated On April 16, 2013 for the Petition, with the assigned receipt number EAC-13-137-50623.  Doc. 1 ¶ 15; Doc. 1-1 at 3-4.  On May 10, 2013, Plaintiff received a Form I-797C[4] Notice of Action dated May 6, 2013 from the Vermont Service Center rejecting Plaintiff's Form I-129 as improperly filed, and informing Plaintiff that the USCIS had stopped processing the Petition because the check submitted as payment was returned by the bank. Doc. 1 ¶ 16; Doc. 1-1 at 6.  The May 6, 2013 Notice of Action stated:

> THIS IS AN INFORMATIONAL NOTICE ONLY.  THIS IS NOT AN INVOICE.
> USCIS has stopped processing the above application or petition because:
> - the check or money order submitted as payment was returned by the bank;
> or
> - the credit card submitted as payment was not honored by the financial institution.
>
> You, or the individual who submitted the payment instrument, will receive an invoice from the USCIS Burlington Finance Center.  The invoice will identify why the payment was returned, what is owed, a return check fee, and where to send payment. USCIS will take no further action on your application or petition until the filing fee, plus the return check fee are paid, in full. Only a money order, bank draft, certified check or credit card charge will be accepted as replacement payment.  If we do not receive payment in full within the time period specified on the invoice, then:
>
> 1. Your application or petition will be rejected as not properly filed.

---

[3] The visa would be applicable for three years.

[4] The Notice of Action Form I-797 is the standard form that federal immigration authorities utilize to inform individuals with pending petitions of any sort before the agency of the status of their cases. "This form may be used to notify a person of a wide variety of administrative actions, including that a petition or application with the agency has been received, that a decision has been made on a petition or application, and may even be used to notify an individual that he or she has been granted lawful status. Because an I–797 form is essentially simply a communication between the agency and the petitioner issued for any one of a wide range of administrative reasons, receipt of a notice of action is not a reliable indicator of an individuals immigration status."  *Buquer v. City of Indianapolis*, 797 F.Supp.2d 905, 911 (S.D. Ind. 2011).

      2. You will be required to submit an entirely new application or petition, along with a new filing fee in order to receive the benefit.

If you have questions about payment, call 802-288-7600.Written inquires [sic] about the returned payment can be submitted to the address shown below.

USCIS Burlington Finance Center
P.O. Box 5000
Williston, VT 05495-5000

Doc. 1-1 at 6; *see* Doc. 1 ¶ 17.

Because Plaintiff and Plaintiff's counsel had not received a separate invoice from the Burlington Finance Center, Plaintiff's counsel on May 23, 2013 called the Finance Center in an effort to make payment via phone; however, payment by phone would not be accepted[5]. Doc. 1 ¶ 18. Plaintiff's counsel was told she would have to wait for a paper receipt of the invoice because there was information on the invoice that was needed to process the payment. Doc. 1 ¶ 18. Plaintiff's counsel then called the USCIS National Customer Service Center ("NCSC") and spoke to an officer (George) who stated that as of May 22, 2013, the Form I-129 was not rejected, and a new payment invoice would be reissued, with a target date of June 6, 2013 for receipt[6]. Doc. 1 ¶ 19.

On June 5, 2013, Plaintiff's counsel contacted the National Customer Service Center after failing to receive the new invoice. Plaintiff's counsel was advised by an officer (Morales) that a service request was mailed on May 23, 2013 and the Form I-129 was rejected on June 3, 2013, but that she would send an email to the Vermont Service Center to inform them there appeared to be a service error because neither the Petitioner nor the attorney of record received the deficiency notice requested. Doc. 1 ¶ 20.

Plaintiff received a Form I-797C -Notice of Action, dated June 3, 2013 stating:

---

[5]The individual at the Finance Center (Corbin) subsequently confirmed that Plaintiff's counsel contacted the Finance Center on May 22, 2013 and confirmed payment by telephone would not have been accepted without the deficiency notice. Doc. 1 ¶ 23.

[6]The officer (George) provided Plaintiff's counsel with Reference Number: WKD 142130289VSC.

We previously notified you that the payment for the filing fee in the above case was returned.  The USCIS Burlington Finance Center did not receive payment within the 14 days of the invoice date.

Your application or petition has been rejected as improperly filed.  Any previously assigned priority or processing date is not longer applicable.  If you wish to purse [sic] the benefit, a new application or petition must be filed, along with a new fee.  Personal Checks will not be accepted.

Doc. 1-1 at 10.

On June 12, 2013, Plaintiff received a "Past Due" deficiency invoice from USCIS Burlington Finance Center dated June 2, 2013 for the improperly filed Form I-129; the bottom of the form reads: "First Delinquency Notice . . . Our records indicate the Invoice above has not been paid.  Please remit the total balance due to avoid additional charges. Refer to the original invoice. . .  If you wish to make your payment by credit card, call the phone number listed above."  Doc. 1-1 at 8; *see* Doc. 1 ¶¶ 23, 24. When Plaintiff's counsel contacted the Finance Center that day regarding the deficiency invoice, counsel was told that Plaintiff's application remained rejected and that the officer was waiting for the NCSC to respond to his inquiry. Doc. 1 ¶ 23.

On June 21, 2013, Plaintiff's counsel contacted the NCSC and spoke to a supervisor (Edna) who said an expedited request was submitted on Plaintiff's behalf on June 5, 2013 to the Vermont Service Center and a response had not been received.  Doc. 1 ¶ 26.  On July 1, 2013, when Plaintiff's counsel spoke to the supervisor again, she informed Plaintiff's counsel that communication was made with a supervisor at the Vermont Service Center to see if a new deficiency invoice would be issued. Doc. 1 ¶ 28.  On July 3, 2013, the supervisor (Edna) informed Plaintiff's counsel that the Vermont Service Center would not issue a new deficiency invoice because a second invoice was issued on June 2, 2013.  Doc. 1 ¶ 29.  Employees at the Vermont Service Center told Plaintiff's counsel that Plaintiff would need to file a new application. Doc. 1 ¶ 29.

**III. Analysis**

***A. Basis for federal jurisdiction***

Plaintiff's Complaint seeks a writ of mandamus pursuant to the Administrative Procedures Act, 5 U.S.C. §704, and the federal Mandamus Act, 28 U.S.C. § 1361[7]. Doc. 1 ¶¶ 5-7. The Mandamus Act gives the Court original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. 28 U.S.C. § 1361. Mandamus relief is only appropriate when: 1) the plaintiff has a clear right to the relief requested; 2) the defendant has a clear duty to act; and 3) 'no other adequate remedy [is] available.'. . . [A] writ of mandamus 'is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty.'" *Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003); *Eldeeb v. Chertoff,* 619 F. Supp. 2d 1190, 1209 (MD. Fla. 2007) (holding the CIS duty to applicant to process application was nondiscretionary, while CIS did not have a duty to action on his application at a certain pace because the pace full under the discretion of the agency). Whether the Court has mandamus jurisdiction in this action is determined by whether Defendants owed a clear, non-discretionary duty to Plaintiff.

While not alleged in the Complaint's jurisdiction section, but cited in Plaintiff's other briefing (Doc. 19), the particular federal statute creating the duty at issue here is found in 8 C.F.R. § 103.2(a)(7)[8] which describes "the process by which a dishonored check is to be handled." Plaintiff

---

[7]Plaintiff also sought relief under the Declaratory Judgment Act, 28 U.S.C. §2201 and §2202; however, other courts have held that 28 U.S.C. §2201 and §2202 are not an independent basis for jurisdiction, therefore, the claims must be based on a separate federal statute or law. "[T]he declaratory judgment statute does not confer jurisdiction on a district court." *See Fleet Bank, N.A. v. Burke*, 160 F.3d 883, 886 (2d Cir. 1998) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)); *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)(holding the Declaratory Judgment Act "is not an independent source of federal jurisdiction; [it] is only available if a judicially remediable right already exists"); *see also Eleeb v. Chertoff*, 619 F. Supp. 2d 1190, 1210 (M.D. Fla. 2007) (citing cases) (holding court lacked jurisdiction under the Declaratory Judgment Act for claims made against immigration officials for the pace of processing application).

[8]The pertinent portion of 8 CFR § 103.2(a)(7)(iii) states:
(ii) Non-payment. If a check or other financial instrument used to pay a filing fee is subsequently returned as not payable, the remitter shall be notified and requested to pay the filing fee and associated service charge within 14 calendar days, without extension. If the benefit request is pending and these charges are not paid within 14 days, the benefit request shall be rejected as improperly filed. If the benefit request was already approved, and these charges are not paid, the approval shall be automatically revoked because it was improperly filed. If the benefit request was already denied, revoked, or abandoned, that decision will not be affected by the non-payment of the filing or fingerprinting fee. New

(continued...)

argues that the provision "imposes a statutory duty on the Defendants to 'notify' the remitter of the dishonored payment and to inform the remitter of the process by which all fees owed and appropriate service charges can be paid." Doc. 19 at 2 (citing 8 C.F.R. § 103.2(a)(7)(ii)). Plaintiff argues that, to the extent that a new invoice was issued on June 2, 2013, the Form I-129 submitted by Plaintiff was rejected on June 3, 2013 and did not allow Plaintiff sufficient time to cure the filing defect. Plaintiff is seeking mandamus for the Court to direct USCIS to reinstate the Form I-129 filed by Plaintiff on April 1, 2013, and direct USCIS Vermont Service Center to reissue the deficiency notice and allow Plaintiff 14 days to cure its filing defect.

Defendants have raised the affirmative defenses of standing and mootness based on the threshold number of visas already having been exceeded, which would make it infeasible for the Court to order additional ones. Defendants have also raised the issue of improper venue.

### A. Standing/Mootness

Defendants contend that Plaintiff's dispute with the agency is moot and Plaintiff cannot obtain the relief sought because USCIS had reached the maximum number of H-1B visas that the law allowed it to grant for the fiscal year. The H-1B visa program allows American employers to temporarily hire foreign non-immigrant workers to work in a "speciality occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(B). In preceding years, the cap on H-1B non-immigrant aliens was as high as 195,000, *see* 106 P.L. 313(a), but has been set indefinitely at 65,000 since fiscal year 2004. 8 U.S.C. § 1184(g)(1)(A).

Article III of the Constitution limits the jurisdiction of federal courts to the consideration of "cases" and "controversies." U.S. Const. art. III, § 2. The "case or controversy" requirement imposes

---

[8](...continued)
fees will be required with any new application or petition. Any fee and service charges collected as the result of collection activities or legal action on the prior benefit request shall be used to cover the cost of the previous rejection, revocation, or other action.
(iii) Rejected benefit requests. A benefit request which is rejected will not retain a filing date. There is no appeal from such rejection.
8 CFR § 103.2(a)(7)(iii) and (iii).

justiciability limitations on federal courts, and these limitations include mootness. *Nyaga v. Ashcroft*, 323 F.3d 906, 913–16 (11th Cir. 2003) (citing *Soliman v. United States ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002)); *see also Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). Thus, the question of mootness is a threshold inquiry in every case. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("[T]he question of mootness is . . . one which a federal court must resolve before it assumes jurisdiction.").

When the district court is presented with a moot case, the case must be dismissed because any decision on the merits would constitute an impermissible advisory opinion. *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001); *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1216-17 (11th Cir. 2000) (holding a case must be dismissed as moot if the court can no longer provide "meaningful relief"). The district court lacks the power, on mootness grounds, to decide a case if its decision cannot affect the rights of the litigants in the case. *Rice*, 404 U.S. at 246, 92 S.Ct. at 404; *see also Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("[A] case is moot when . . . the parties lack a legally cognizable interest in the outcome.").

Courts, including the Eleventh Circuit, have dismissed immigration cases as moot where the applicant for the visa or application was no longer eligible and the court could not provide "meaningful relief." *See, e.g., Nyaga*, 323 F.3d at 915-16 (concluding that because plaintiff was no longer eligible to receive an immigrant visa before the end of the fiscal year, the district court could not provide meaningful relief and was compelled to dismiss the case as moot); *Kodra v. Secretary, Dept. of State*, 903 F.Supp.2d 1323, 1328 (M.D. Fla. 2012) (holding case was moot when consular officer had denied application for visa); *see also Schneider v. Chertoff*, 450 F.3d 944, 959 (9th Cir. 2006) (holding applicant's claim became moot when his visa petition and national interest waiver request were denied because of abandonment); *Kolev v. Department of Homeland Security*, 138 Fed.Appx. 3 (9th Cir. 2005) (holding consulate's granting of visa to applicant-fiancee of citizen

rendered "moot" citizen's claims against government officials for alleged wrongful denial of visa).

In the Eleventh Circuit case of *Nyaga v. Ashcroft*, the plaintiff sought mandamus relief for an order to compel government officials to complete the process for his visa application and the court ordered the officials to adjudicate his application *as if the fiscal year had not ended*.  323 F.3d 906, 915-16 (11th Cir. 2003) (emphasis added).  On appeal, the Eleventh Circuit vacated the order and remanded it with instructions to dismiss the mandamus action as moot, holding that language in the applicable immigration statute which stated that aliens "shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected" rendered moot the relief sought by plaintiff – issuance of a visa after the end of the specific fiscal year.  *Id.* at 914.  The Eleventh Circuit cited a number of other cases with similar holdings to the effect that once the applicable fiscal year ended, the applicants' eligibility for such visas ended, and the INS could no longer adjudicate the applications.  *Id.* at 915 (citing *Iddir v. INS*, 301 F.3d 492, 500-01 (7th Cir. 2002) (concluding that even if the INS were to adjudicate applications after the fiscal year ended, visas could not be issued); *id.* at 502 (Flaum, J., concurring) (concluding that the plaintiffs are no longer eligible to receive visas); *Fornalik v. Perryman*, 223 F.3d 523, 526 (7th Cir. 2000); *Vladagina v. Ashcroft*, 2002 WL 1162426 (S.D. N.Y. Apr. 8, 2002) (unpublished); *Iddir v. INS*, 166 F.Supp.2d 1250, 1259 (N.D.Ill. 2001) (holding that "[t]he end of fiscal year 1998 was September 30, 1998, which means that plaintiffs are no longer eligible to receive visas"), *aff'd on other grounds*, 301 F.3d 492 (7th Cir. 2002); *Zapata v. INS*, 93 F.Supp.2d 355, 358 (S.D. N.Y. 2000) ("The plain meaning of § 1154 is that after the fiscal year has ended on September 30, no diversity visas may be issued *nunc pro tunc* based on the results of the previous fiscal year's visa lottery."); *Diallo v. Reno*, 61 F.Supp.2d 1361, 1368 (N.D. Ga. 1999)).  Because the district court could not provide meaningful relief to the Plaintiffs seeking a visa applications once the fiscal year ended, the court should have dismissed the action as moot. *Id*. at 916.

In a case cited by Defendants, and directly on point involving H-1B visas, the district court found that it lacked jurisdiction on mootness grounds to grant new H-1B petitions to a plaintiff-employer because the statutory limit on such visa applications had been reached. The court found:

> On its face, the instant case is indisputably moot. For the purpose of assessing justiciability, the Court considers the crux of Plaintiffs' sought relief, *i.e.* consideration of their H-1B petitions for FY 2005. Even if, as Plaintiffs allege, Defendant should have considered their H-1B petitions when they were sent in October 2004, the Defendant notes that the statutorily imposed limit of 58,200 H-1B visas for citizens of all nations but Singapore and Chile had been exceeded for FY 2005 as of March 2, 2005. This Court cannot order the Defendant to grant an H-1B visa to Plaintiff if it is unable to do so otherwise. *See Nyaga v. Ashcroft*, 323 F.3d 906, 913, 916 (11th Cir.2003) (per curiam). Moreover, FY 2005 has ended as of September 30, 2005, and therefore no more visas could be issued for that period, even if the cap had not been exceeded. Therefore, exceptions aside, there is no remaining controversy "admitting of specific relief through a decree of a conclusive character" that this Court can address. *Lewis*, 494 U.S. at 477, 110 S.Ct. 1249, 108 L.Ed.2d 400.

*Law Office of Azita Mojarad v. Aguirre*, No. 05-0038, 2006 WL 785415, *4 (D.D.C. Mar. 27, 2006).

Here, the USCIS had already issued all of the visas for the statutory period and cannot now issue an H-1B visa to the Petitioner.  USCIS only has statutory authority to approve 65,000 H-1B visas in any given year. *See* 8 U.S.C. § 1184(g)(1)(A)(vii).  By April 5, 2013, five days after the earliest filing date, USCIS had received more petitions than there were available visas for employers to temporarily hire foreign non-immigrant workers[9] under the H-1B visa program.  8 U.S.C. § 1101(a)(15)(H)(i)(B).  Thus, because there was more demand for H-1B visas than the number available, a "visa lottery" was used, and the H-1B visa number that Plaintiff received was assigned through the "visa lottery."  Doc. 19 at 4. Defendants argue that this statutory limitation prevents USCIS from now issuing a visa to Plaintiff.

---

[9]USCIS announced that the H-1B cap had been reached in the first week petitions could be filed.  The USCIS reported between April 1 and April 5, 2013, it had received about 124,000 petitions for the total 85,000 visas available for FY 2014 (31 HRR 374, 4/15/13). http://www.bna.com/uscis-announces-h1b-n17179889540/.

Plaintiff concedes that Defendants are subject to an annual numerical cap limiting the H-1B visa to no more than 65,000 from the general cap[10] and that the FY 2014 statutory cap has been reached (Doc. 19 at 3), but argues the cap "is not at issue here" because the H-1B visa number originally given to Plaintiff remains "unused." Plaintiff argues that the issue here is not one of losing a filing date as a result of the failure to pay a required fee because there was a visa number that was assigned to Plaintiff and purportedly "there exists no manner by which it would be provided to another applicant." Plaintiff contends that the pool of eligible applicants for the "visa lottery" consisted of "properly filed" applications packages, "irrespective of whether the remittance of filing fees was made through a payment method that would be honored." Doc. 19 at 4.

Plaintiff contends that when the visa lottery was completed, all applications that were chosen were issued a filing receipt, and only then were payment remittances deposited. Plaintiff argues that all applications that did not receive a "visa number" were summarily rejected in accordance with an established procedure set forth by Defendants well in advance of the filing period for the availability of these H-1B visa numbers. Without citation to any authority whatsoever, Plaintiff argues that once its case was chosen, the visa number assigned to it was not available to any other applicants, because applications not selected for processing were rejected; thus, "Contrary to Defendants' assertions, if the visa number assigned to Plaintiff is not used, it will be lost" because "there is no process by which its chosen visa number would be assigned to another applicant." Doc. 19. Plaintiff argues its case is distinguishable from *Mojarad* because it is not asking the Court "to order Defendants to make available a 'cap subject' H-1B visa number that is not otherwise available as the D.C. Circuit determined it would have to do if it were to grant the requests made by the plaintiffs in *Mojarad.*"

---

[10]Although both Defendants and Plaintiff do not dispute that the visa application was for the general cap of 65,000, information from the USCIS exhibits indicates Plaintiff's application was for a "master's H-1B visa" which goes to those with a U.S. advanced degree, although that cap was also exceeded. USCIS first awarded the master's H-1B visas, and those who did not receive a visa were included in the lottery for the general H-1B visa. *See* http://www.uscis.gov/ (Search for H-1B Fiscal Year Cap Season).

Plaintiff argues that *Mojarad* is distinguishable because, in that case, by the time plaintiff-employer filed its applications the number of allowable H-1B visa numbers had already been assigned to others and no further applications could be received. *Id.*

Defendants do not dispute that Plaintiff's Petition was one of those initially chosen for processing. They argue, however, that after the filing fee that Plaintiff tendered by check was returned by the bank for insufficient funds, the Petition was officially *rejected* on June 1, 2013 by the Vermont Service Center when the check submitted as payment was returned by the bank for insufficient funds, thus, no application remains pending. Plaintiff contends that because its application H-1B application package has not been physically returned to Plaintiff or counsel, it has not been officially "rejected."

The Court is not persuaded by Plaintiff's unsupported argument that its situation is distinguishable or the case is not moot. In this case, Plaintiff argues that a procedural error – lack of an invoice from the Vermont Service Center – led to its failure to rectify the bounced check and its application was rejected and its filing date consequently lost. " If a check or other financial instrument used to pay a filing fee is subsequently returned as not payable, the remitter shall be notified and requested to pay the filing fee and associated service charge within 14 calendar days." 8 C.F.R. 103.2(a)(7)(ii). Here, it is undisputed that Plaintiff was notified in a Notice of Action dated May 6, 2013 that its check was returned as not payable. Doc. 1-1 at 6. Plaintiff had 14 days under the regulations to cure the bounced check. 8 C.F.R. § 103.2(a)(7)(ii). Plaintiff did not pay the filing fee and associated service charge, allegedly because it did not receive an invoice. Doc. 1. The net result is that because "the benefit request [wa]s pending and these charges [we]re not paid within 14 days" thus, "the benefit request shall be rejected as improperly filed." 8 C.F.R. § 103.2(a)(7)(ii). Pursuant to the third subsection governing "rejected benefit requests," a benefit request which is

rejected will not retain a filing date," and "there is no appeal from such rejection." 8 CFR § 103.2(a)(7)(iii).

Under the plain language of § 103.2(a)(7), when the charges were not paid within 14 days, Plaintiff's application was rejected as improperly filed, and thus, the application did not retain a filing date. There is nothing in the documents that states Plaintiff was ever assigned an actual "visa number," rather, Plaintiff was assigned a "receipt number."[11]  Moreover, USCIS stopped processing the application on May 6, 2013, and because the returned check and service fee were not timely paid, Plaintiff's application was rejected.  Nowhere in the correspondence or forms from the USCIS does it say that Plaintiff was actually assigned a "visa number"[12] that Plaintiff theoretically would still be available and not assigned to another "visa lottery" applicant during the process of selecting from the many applications filed. Therefore, if the Court were to order the relief Plaintiff seeks at this time, *i.e.*, order USCIS to reinstate Plaintiff's application and grant Plaintiff an H-1B visa, the Court would necessarily have to order the USCIS to exceed the 65,000 visas USCIS had issued once Plaintiff's application was rejected.

Defendants also argue that Plaintiff lacks standing because, as in *Mojarad,* USCIS had reached its statutory cap of 65,000 H-1B visas on April 5, 2013 without Plaintiff having submitted a valid visa petition, and because Plaintiff had not submitted a valid H-1B visa petition prior to the statutory cap having been reached, Plaintiff had no standing to challenge the visa rejection.

In *Mojarad*, the district court found that the applicant lacked standing because USCIS had reached its statutory cap on H-1B visas without Plaintiff having submitted a valid visa petition. *Mojarad*, 2006 WL 785415, *7.  As the district judge noted, in order to have subject matter

---

[11]Receipt number EAC-13-137-50623 was assigned. *See* Doc. 1-1 at 3.  The notice did not grant any immigration status or benefit, nor was it evidence that the case was still pending; it only showed that the application or petition was filed on the date shown.  Doc. 1-1 at 3.

[12]Plaintiff does not state the "visa number" in the Complaint.  Doc. 1.

jurisdiction over a case, Plaintiff must satisfy the "'irreducible constitutional minimum of standing.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Because Plaintiff had not submitted a valid H-1B visa petition prior to the statutory cap having been reached on April 5th, Defendants argue, Plaintiff by statute lost its filing date by not satisfying the statutory filing fee; without a properly-filed visa petition, Plaintiff does not have standing to challenge its denial.  Plaintiff did not address the standing argument in its Response/Motion to Strike (Doc. 19).

As in *Mojarad*, the "standing problem inherent in [the] controversy is the revelation that the USCIS reached (and in fact exceeded) its statutory cap on H-1B visas, solely by adjudicating the remaining petitions it had received by the cut-off date it established for FY 2005. . . As a preliminary matter, then, even if the Defendant administered the H-1B petitioning process in the manner that Plaintiffs contend it must, the number of requisite visas would have already been granted by the time Plaintiffs' petitions were considered, and they would therefore have been summarily rejected."  *Id.* at *8. Similarly, in this case, by the time Plaintiff's visa petition was rejected, all of the H-1B visas had been assigned and the relief Plaintiff seeks – for the Court to reinstate Plaintiff's visa petition, allow Plaintiff to cure the bounced check to receive an H-1B visa – is not redressable.  "To secure constitutional standing the plaintiffs must show injury in fact that is fairly traceable to the defendant's action and redressable by the relief requested." *Id.* (citing *Animal League Def. Fund, Inc. v. Espy*, 29 F.3d 720, 723 (D.C. Cir.1994) (internal quotation marks and citations omitted)).

For the reasons stated above, Plaintiff's claims for relief are moot and Plaintiff lacks standing to pursue the relief it seeks.  It is respectfully **RECOMMENDED** that Plaintiff's claims be **DISMISSED**.

### II. Venue

Even if the Court were to find that Plaintiff's claims were not moot, venue in the Middle District of Florida is improper, and the case must be transferred.  Defendants raised the issue of

improper venue.  Doc. 16.  Plaintiff contends that venue is proper in Orlando, Florida because "a substantial part of the events or omissions giving rise to the claim occurred" in the Middle District of Florida.  Doc. 1 ¶ 9 (citing 28 U.S.C. § 1391(e)).

Pursuant to § 1391(e), cases in which the defendant is an officer or employee of the United States acting in his or her official capacity may be brought where the official resides, where a substantial part of the events or omissions giving rise to the claim occurred, or where the plaintiff resides if no real property is involved in the action.  28 U.S.C. § 1391(e)(1).  In its Response/Motion (Doc. 19), Plaintiff argues that venue in Orlando is proper because "it is a national company that undertakes substantial work within the Orlando area" and the current "employment offer" is located within the Orlando area.  Doc. 19.

However, none of the government defendants resides in the Middle District of Florida. Both the Secretary of Homeland Security and the Director of the CIS reside in Washington, D.C., and the Director of the CIS Vermont Service Center resides in Vermont.  *See Blacher v. Ridge,* 436 F.Supp.2d 602, 608 (S.D. N.Y. 2006) (holding court lacked proper venue over employer's challenge to Immigration's denial of H1-B visa to immigrant employee).  A corporate plaintiff resides in the judicial district in which it maintains its principal place of business for venue purposes, 28 U.S.C. § 1391(c)(3), and Plaintiff resides in New York.

This case has not  been filed in the appropriate venue since "a substantial part of the events or omissions" took place in Vermont, and there are no allegations of fact as to *any* actions that occurred in the Middle District of Florida.  *All* of the actions by the Citizenship and Immigration Services as alleged in the Complaint appear to have taken place at the Vermont Service Center and the Burlington Finance Center.  Doc. 1 ¶ 15-32.  It is respectfully **RECOMMENDED** that, if the Complaint is not **DISMISSED**, then venue be transferred to the **District of Vermont**, having the

greatest connection to the events and omissions giving rise to the claim; alternatively, venue may be transferred to the District of D.C. or the District of New York.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 22, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy